UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BHK REALTY, LLC; THE PALE, LLC d/b/a BUSKERS PUB; and THE BODHI SPA, LLC (Class Representatives), <br>     Plaintiffs, <br><br> v. <br><br> THE NARRAGANSETT ELECTRIC COMPANY d/b/a NATIONAL GRID; NATIONAL GRID LNG, LLC; and ALGONQUIN GAS TRANSMISSION, LLC, <br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 19-642-JJM-LDA |
| GAIL JOHNSON; STUART HEBB; RICHARD HYDE; SANDY TARR; VICTORIA MELE; BEKKI SCHENKER; PATRICK KENNEDY; NICK HARVEY; and SHAWN MCKENNA (Class Representatives), <br>     Plaintiffs, <br><br> v. <br><br> THE NARRAGANSETT ELECTRIC COMPANY d/b/a NATIONAL GRID; NATIONAL GRID LNG, LLC; and ALGONQUIN GAS TRANSMISSION, LLC, <br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 19-643-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Plaintiffs, individual residents and business owners on Aquidneck Island in Newport County, Rhode Island, filed suit against Defendants arising out of a gas service interruption on the Island. That interruption, caused by a cold weather event, led to Plaintiffs' losing gas service to their homes and businesses, resulting in economic and property damage. Plaintiffs amended the Complaint several times; the Fourth Amended Complaint is the operative one. *BHK* ECF No. 32; *Johnson* ECF No. 31.[1] Before the Court are eight motions, seeking to dismiss Plaintiffs' entire Fourth Amended Complaint. *BHK* ECF Nos. 33-36; *Johnson* ECF Nos. 32-35. The Court turns to the facts leading to Plaintiffs' litigation.

## I.    BACKGROUND

The named Plaintiffs in *Johnson* are primarily individual Newport residents. The named Plaintiffs in *BHK* are Newport businesses. They sued four Defendants – Narragansett Electric d/b/a/ National Grid (Narragansett), a local distribution company that controls the gas delivered via an interstate pipeline and then distributes that gas to customers; National Grid LNG, LLC (NG-LNG), affiliated with Narragansett and operates an LNG storage facility in Providence; National Grid USA Service Company (NG USA) a Massachusetts corporation affiliated with Narragansett and NG-LNG; and Algonquin Gas Transmission, LLC, who owns and operates a meter-and-regulator station in Weymouth, Massachusetts and operates an interstate natural gas pipeline system that delivers gas throughout the Northeast, including Rhode Island.

---

[1] The Complaints are identical save for the named Plaintiffs.

The facts alleged that triggered this lawsuit are as follows.  On January 21, 2019, temperatures in Rhode Island dropped to near zero degrees Fahrenheit. Additional natural gas supply was needed to meet the sharply increased demand, so Narragansett contacted its affiliate NG-LNG to "re-gasify" liquified natural gas ("LNG") and send it through the pipeline system to increase gas supply and support the system's pressure levels.  The NG-LNG plant suffered an interruption in power supply, however, that triggered a temporary shutdown, preventing it from supplying the additional gas.  At the same time, Algonquin's pipeline experienced an increased draw of gas, which further exceeded the maximum contracted rates of delivery into Narragansett's gas distribution system for several hours.  In response, Algonquin tried to raise the flow rate of gas from its meter-and-regulator station in Weymouth, Massachusetts, but due to an alleged "meter configuration error," the Weymouth station's flow rate decreased for a short time.

Plaintiffs allege that these three events on January 21, 2019—the NG-LNG shut down, overtakes on Algonquin's system, and the alleged configuration error at Algonquin's Weymouth meter station—led to customers on Aquidneck Island experiencing low gas pressure and the loss of gas.  As a result of this temporary interruption in service in Narragansett's distribution system, Plaintiffs allege they were harmed.

Plaintiffs' Fourth Amended Complaint alleges the following claims: Strict Liability against NG-LNG (Count 1); Negligence against Narragansett (Count 2); Negligence against NG-LNG (Count 3); Joint Enterprise against NG-LNG, NG USA,

and Narragansett (Count 4); Vicarious Liability for NG USA (Count 5); Vicarious Liability for NG-LNG based on agency (Count 6); Breach of Contract against NG-LNG (Count 7); Statutory Violation of minimum operating standards under 49 U.S.C. § 60103 (d) against NG-LNG (Count 8); Negligence against Algonquin (Count 9); and Breach of Contract against Algonquin (Count 10). Plaintiffs seek damages as well as injunctive relief.

All Defendants move to dismiss all the claims. *BHK* ECF Nos. 33, 34, 35, 36; *Johnson* ECF Nos. 32, 33, 34, 35. Plaintiffs agreed to dismiss Defendant NG USA from the case, so its motion is GRANTED, and it is DISMISSED. *BHK* ECF No. 34; *Johnson* ECF No. 32. The Court now turns to the remaining Defendants' Rule 12(b)(6) motions.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) tests the plausibility of the claims presented in a plaintiff's complaint. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 102–03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

There are essentially four motions to dismiss covering the ten counts and request for injunctive relief at issue here because each of the four Defendants filed identical motions in each of the two cases. The Court will address the motions by Count for ease of discussion.

### A.   Count 1 – Strict Liability (NG-LNG)

Plaintiffs bring a strict liability claim against NG-LNG, alleging that it knew or should have known that the infrastructure used to store the LNG "was susceptible to equipment failures resulting in low gas flow and exhibited problems (or the potential for problems) with respect to the inability to vaporize gas that may lead to low gas pressurization to its affiliate Narragansett's customers." *BHK* ECF No. 32 ¶ 48; *Johnson* ECF No. 31 ¶ 54. They also allege that the LNG infrastructure and

transportation "could not be controlled, maintained, possessed, managed, supervised, and/or operated in a safe and reliable manner in the event of a cold snap in the region even with reasonable care including as here the dangerous automatic shutdown of the entire NG-LNG's plant on January 21st." *BHK* ECF No. 32 ¶ 49; *Johnson* ECF No. 31 ¶ 55.    In the face of these allegations, NG-LNG argues that its storage, vaporization, and transportation activities are not ultrahazardous because they are common and valuable services that can be performed safely when the parties involved exercise reasonable care.

"The question of whether a defendant should be held strictly liable for ultrahazardous or abnormally dangerous activities is a question of law." *Splendorio v. Bilray Demolition Co.*, 682 A.2d 461, 465 (R.I. 1996) (citations omitted). *Splendorio* set the parameters of absolute liability in this situation, finding that it "attaches only to ultrahazardous or abnormally dangerous *activities* and not to ultrahazardous or abnormally dangerous *materials.*"    *Id.* at 465-66.    "'[I]f the rule were otherwise, virtually any commercial activity involving substances which are dangerous in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable.'" *Id.* at 466 (quoting *G.J. Leasing Co. v. Union Elec. Co.*, 854 F. Supp. 539, 568 (S.D. Ill. 1994) (quoting *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 615–17 (7th Cir. 1989)).

*Splendorio* involved asbestos; the court acknowledged that that product was an ultrahazardous or abnormally dangerous material but focused on the defendant's activities to determine if it should be held strictly liable.    To do so, the court

considered several factors, as set forth in the Restatement (Second) Torts § 520 (1977), specifically the:

> (a) existence of high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

"'[A]n activity is not abnormally dangerous if the risks therefrom could be limited by the exercise of reasonable care.'" *Splendorio*, 682 A.2d at 466 (quoting *G.J. Leasing Co.*, 854 F. Supp. at 568).

In considering this question of law, a review of the Complaint shows that Plaintiffs do not plausibly allege that the storage, vaporization, or transportation of LNG creates a high degree of risk of some harm to the person, land, or chattels of others or that the likelihood that harm will result from performing that activity is great. They also do not allege that any of these activities cannot be performed safely when NG-LNG exercises reasonable care. Plaintiffs' allegations fall short of the type required for strict liability for an ultrahazardous activity. The Court GRANTS NG-LNG's Motion to Dismiss Count 1.

### B.   Counts 2, 3, and 9 – Negligence (Narragansett, NG-LNG, and Algonquin)

Plaintiffs allege negligence claims against Narragansett, NG-LNG, and Algonquin. Each of these Defendants moves to dismiss, arguing that they did not have a duty to Plaintiffs that was breached when the gas interruption event occurred. They also argue that the economic loss doctrine bars Plaintiffs' negligence claims.

7

### 1. *Economic Loss - Narragansett, Algonquin, and NG-LNG*

The Court will address the latter argument first as it is the same for all Defendants. Under the economic loss doctrine, a plaintiff seeking purely economic losses cannot recover them through a negligence claim. *Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1275-76 (R.I. 2007). "In other words, under this doctrine, a plaintiff may not recover damages under a negligence claim when the plaintiff has suffered no personal injury or property damage." *Id.* at 1275. Narragansett, Algonquin, and NG-LNG argue that the economic loss doctrine bars Plaintiffs' negligence claim because their Complaint only seeks economic damages and fails to allege each Plaintiff's specific property damage. After reviewing the Complaint, the Court finds that Plaintiffs allege frozen and ruptured water pipes, inconvenience, discomfort, stress, and other bodily and mental harms damages. *BHK* ECF No. 32, ¶¶ 33(C)(3)(6); 62-66; 71-74; *Johnson* ECF No. 31 ¶¶ 68-72; 76-80 (alleging real property damages, personal injuries in addition to economic damages). The Complaint's damages allegations, while general, are sufficient at the pleading stage to overcome the hurdle the economic loss doctrine might pose.

### 2. *Gas Tariff - Narragansett*

The Gas Tariff is a contract that governs the relationship between Narragansett and its customers. It is approved by the Rhode Island Public Utilities Commission (the PUC), a quasi-judicial tribunal that enforces standards of conduct and investigates tariffs and charges for providing gas and other utility services. Narragansett moves to dismiss the negligence claim, arguing that the Gas Tariff

governs the terms and conditions of its relationship with Plaintiffs.  It asserts that Section 5 of the Gas Tariff broadly limits Narragansett's liability in the case of gas interruptions.  Plaintiffs counter that two other sections of the Gas Tariff, Sections 10 and 11, contemplate and allow for Narragansett to be held liable for its negligence.

Narragansett invokes Section 5 as the basis for its immunity from liability to its customers for the gas interruption.   Section 5 provides that "whenever [Narragansett] deems that the situation warrants any interruption or limitation of service to be rendered, such interruption or limitation shall not constitute a breach of contract, and shall not render the Company liable for any damages[.]"  Plaintiffs acknowledge that the language of Section 5 precludes breach of contract liability for gas service interruptions, but point to the last paragraph of Section 10 and to Section 11 as expressly providing for negligence liability.  Section 10 states that Narragansett should use reasonable care in the supply of natural gas and the failure to do so "shall not alter the Company's liability under legal standards for damages in the case of its negligent or intentionally wrongful conduct with respect to any act or failure to act by the Company."  Section 11 provides for liability "for damages claimed to have resulted from the Company's conduct of its business only when the Company, its employees, or agents have acted in a negligent or intentionally wrongful manner."

Plaintiffs' allegations in the framework of the Gas Tariff are sufficient to make a claim for negligence against Narragansett.  Plaintiffs allege that "Narragansett, owed Plaintiffs a duty of reasonable care in their ownership, control, construction, maintenance, possession, management, supervision, provision, and/or operation of

the supply and distribution of natural gas to Aquidneck Island, including the City of Newport and Town of Middletown." *BHK* ECF No. 32 ¶ 57; *Johnson* ECF No. 31 ¶¶ 63. While Section 5 does exempt Narragansett from breach of contract liability for interrupting service under certain circumstances, Sections 10 and 11 leave open the potential for Narragansett to be liable under other circumstances relevant to the duty Plaintiffs have alleged it had to them. The Court DENIES Narragansett's Motion to Dismiss Count 2.

### 3. Duty - NG-LNG

Plaintiffs sue NG-LNG for negligence, alleging that it had a duty to Plaintiffs, and it breached that duty, leading to the gas shutdown and resulting damages. *BHK* ¶¶ 67-74; *Johnson* ECF No. 31 ¶¶ 73-80. NG-LNG moves to dismiss arguing that it owes no legal duty to Plaintiffs because they are downstream users with whom NG-LNG has no relationship.

Acknowledging that they do not have a direct contractual relationship with NG-LNG, Plaintiffs nonetheless argue that their negligence claim withstands the motion because there exists a special relationship between Narragansett and NG-LNG that establishes that a duty of care exists here. Rhode Island courts have found that a legal duty exists to control a third-party's conduct where "'a defendant has a 'special relationship' with either the person whose conduct needs to be controlled or with the intended victim of the conduct.'" *Flynn v. Nickerson Cmty. Ctr.*, 177 A.3d 488 (R.I. 2018) (quoting *Santana v. Rainbow Cleaners, Inc.*, 969 A.2d 653, 658 (R.I. 2009)).

Plaintiffs' Complaint details NG-LNG's operations and its relationships with the other Defendants. Discovery may reveal further intimate connections between NG-LNG and Narragansett sufficient to establish a special relationship and a duty of care. Additionally, Plaintiffs allege that NG-LNG knew or should have known that its unreasonable operation of its LNG plant would adversely impact end users like Plaintiffs. *BHK* ECF No. 32 ¶¶ 67-74; *Johnson* ECF No. 31 ¶¶ 73-80. The Complaint sufficiently touches on a special relationship, alleging that NG-LNG breached that duty by violating the Gas Tariff, its Service Agreements with Narragansett, and its agreement with PUC. *BHK* ECF No. 32 ¶¶ 67-69; *Johnson* ECF No. 31 ¶¶ 73-75. Again, discovery will frame the contours of any special relationship and ultimately define the duty NG-LNG owed to Plaintiffs.

Because Plaintiffs have alleged enough to show that they are entitled to relief against NG-LNG based on its alleged negligence, the Court DENIES NG-LNG's motion on Count 3.

### 4. Duty - Algonquin

Algonquin moves to dismiss Plaintiffs' negligence claim, arguing that, as downstream gas end users, it owed them no duty. Citing Rhode Island case law, Algonquin argues that utility tariffs or service agreements do not establish a legal duty to third parties. *White v. Tilcon Gammino, Inc.*, No. KC No. 88-0618, 1992 WL 813636, at *2 (R.I. Super. July 28, 1992) ("absent an express undertaking to the general public, an electric company owes no legal duty to non-customers to maintain streetlights in good operating condition."). Plaintiffs counter that their negligence

11

claim against Algonquin is based on its failure to transport the gas to the delivery point (to Narragansett) in accordance with the volume the Gas Tariff required.

Algonquin runs its pipeline system according to a regulatory scheme that gives the Federal Energy Regulatory Commission ("FERC") authority over its operations. Plaintiffs do not seek damages for negligence by expanding what the FERC Tariffs require and the duty commensurate with those requirements. They agree that the FERC Tariffs establish the terms and conditions under which Algonquin transports gas to customers. Plaintiffs' allegations as to Algonquin's negligence relate to its duty to "provide natural gas products at a safe pressure" and its failure to do that at each stage. *BHK* ECF No. 32 ¶¶107-115; *Johnson*, ECF No. 31 ¶¶ 112-121. It is foreseeable that Algonquin's failure to provide the agreed-to volume of gas to Narragansett would affect all end users of its product. *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 6 (1st Cir. 2018) (detailing factors a court should consider when deciding whether to impose a duty on third parties). As such, Plaintiffs' allegations of Algonquin's duty and breach are sufficient to survive Rule 12(b)(6)'s standard of review, the Court DENIES Algonquin's Motion to Dismiss Count 9.

C.     Counts 4, 5, and 6 - Joint Enterprise and Vicarious Liability (NG-LNG and Narragansett)

Plaintiffs make three claims rooted in the legal concepts of joint enterprise and vicarious liability. These claims allege that Defendants NG-LNG and Narragansett[2]

---

[2] Each of these counts makes allegations against NG USA in addition to the other defendants. The Court does not include NG USA it its discussion because, by agreement of the parties, it was dismissed.

are agents or acting by agreement such that they are chargeable with negligence and breach of contract of and by other Defendants alleged in several of Plaintiffs' other claims. Joint enterprise requires "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." Restatement (Second) of Torts § 491 cmt. c (1965). "All members of a joint enterprise are chargeable with the negligence of a member of the joint enterprise when such members acts within the scope of the agency created by said joint enterprise." *Walsh v. Israel Couture Post, No. 2274 V.F.W. of the U.S.*, 542 A.2d 1094, 1096 (R.I. 1988); *see also Salmeron v. Nava*, 694 A.2d 709, 712 (R.I. 1997).

Joint enterprise and vicarious liability are more theories of liability than legal claims. If they are factually applicable, they can support a plaintiff's claims against defendants whose actions are part of a chain of conduct that causes injury or damage. Plaintiffs have alleged that "Narragansett and NG-LNG … are not separate and distinct entities but are so closely affiliated as subsidiaries of Narragansett …, such that they had a community of interests with joint or mutual control to direct and govern their operations and were bound by an expert implied contract with a sharing of profits and losses and are responsible and owe a duty of care not only to Narragansett, but to the Plaintiffs herein." *BHK* ECF No. 32 ¶¶ 76; 95-97; *Johnson* ECF No. 31 ¶¶ 82; 101-103.

13

NG-LNG and Narragansett generally defend themselves against these joint theories of liability by arguing that they do not apply because each of them operates independently and none of them have any authority to act on each other's behalf leading to potential liability for the negligence and/or breach of contract of any other. Based on Plaintiffs' allegations, discovery of corporate structure and about interaction between these Defendants could reveal a common purpose or joint interactions such that these legal concepts could support Plaintiffs' claims that NG-LNG and Narragansett are liable for negligence and/or breach of contract based on joint or vicarious liability. Plaintiffs' Complaint contains sufficient allegations as to NG-LNG's and Narragansett's concerted and joint liability such that Plaintiffs can use these collective theories to prove other causes of actions. However, because these counts are not separate causes of action, the Court GRANTS Defendants' Motions to Dismiss Counts 4, 5, and 6.

### D.   Counts 7 and 10 – Breach of Contract (NG-LNG and Algonquin)

#### 1. NG-LNG

Plaintiffs argue that because they are intended beneficiaries of the contracts between NG-LNG and Narragansett, they can state a claim for breach of contract against NG-LNG. To prevail in a breach of contract claim, "a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010)). To succeed on a breach of contract claim as a third-party beneficiary, a plaintiff must be the intended not incidental

beneficiary of the contract between other entities. *Hexagon Holdings, Inc. v. Carlisle Syntec Inc.*, 199 A.3d 1034, 1039 (R.I. 2019).

The Complaint is bereft of allegations demonstrating that Plaintiffs were intended beneficiaries of the contract between Narragansett and NG-LNG. The fact that Plaintiffs, *Narragansett's* customers, incidentally benefited from the business that Narragansett and LNG did together does not make them intended third-party beneficiaries. Because there is no contract between Plaintiffs and NG-LNG and they have failed to allege or cite to any plausible facts allowing the inference that they were intended, not just incidental, beneficiaries of the FERC Tariffs, Plaintiffs' Count 7 against NG-LNG fails. The Court GRANTS NG-LNG's Motion to Dismiss Count 7.

> *2. Algonquin*

The analysis is the same as to Count 10 against Algonquin. Plaintiffs are not parties to any contracts between Narragansett and Algonquin but seek relief as third-party beneficiaries to Algonquin's contractual agreement with Narragansett. They allege that Algonquin breached this agreement by "fail[ing] to manage its M&R in Weymouth[,] Massachusetts with due care," by "fail[ing] to take contingency actions," and by "fail[ing] to supply gas to Aquidneck Island." *BHK* ECF No. 32 ¶¶ 121-122; *Johnson* ECF No. 31 ¶¶ 127-128. Plaintiffs do not allege that there is any language in the FERC Tariff or other service agreements between Algonquin and Narragansett that reference or suggest that end users were intended beneficiaries of those contracts. Algonquin does not sell natural gas to customers like Plaintiffs; its

customers purchase gas from third parties and Algonquin transports the gas to those customers.  As such, the Court GRANTS Algonquin's Motion to Dismiss Count 10.

### E.    Count 8 – Violation of 42 U.S.C. § 60121 (NG-LNG)

Plaintiffs bring a claim against NG-LNG, alleging that it "did violate the minimum operating maintenance standards under 49 U.S.C. § 60103(d) on numerous occasions, and continuing, pursuant to the rules and regulations under 49 U.S.C. § 60103(d) and the regulations promulgated by the Pipeline and Hazardous Materials Safety Administration ("PHMSA")." *BHK* ECF No. 32 ¶ 104; *Johnson* ECF No. 31 ¶ 110.  To bring a suit under the Pipeline Safety Act ("PSA"), a person "may bring the action only after 60 days after the person has given notice of the violation to the Secretary of Transportation or to the appropriate State authority ... and to the person alleged to have committed the violation."  49 U.S.C.A. § 60121.  A person also "may not bring the action if the Secretary or authority has begun and diligently is pursuing an administrative proceeding for the violation" either.  *Id.*

NG-LNG moves to dismiss this claim, arguing that Plaintiffs have failed to allege that they notified the Transportation Secretary or anyone at the PHMSA and therefore do not meet the notice requirement.  It also argues that Plaintiffs' Complaint fails to address whether the PHMSA "beg[a]n and diligently pursued an administrative proceeding for the violation."  Reviewing the Complaint, the Court agrees that it is deficient in addressing these threshold requirements to filing a citizen suit.  As such, the Court GRANTS NG-LNG's Motion to Dismiss Count 8.

IV.   CONCLUSION

The Court GRANTS by agreement Defendant NG USA's Motion to Dismiss. *BHK* ECF No. 34; *Johnson* ECF No. 32.

The Court GRANTS IN PART AND DENIES IN PART Defendants Algonquin, Narragansett, and NG-LNG's Motions to Dismiss.  *BHK* ECF Nos. 33, 35, and 36; *Johnson* ECF Nos. 33, 34, and 35.

1. Strict Liability against NG-LNG (Count 1) – Motion to Dismiss GRANTED.

2. Negligence against Narragansett (Count 2) - Motion to Dismiss DENIED.

3. Negligence against NG-LNG (Count 3) - Motion to Dismiss DENIED.

4. Joint Enterprise against NG-LNG, NG USA, and Narragansett (Count 4) - Motion to Dismiss GRANTED.

5. NG USA is vicariously liable for NG-LNG and Narragansett (Count 5) - Motion to Dismiss GRANTED.

6. Vicarious Liability – NG-LNG is an agent of NG USA and Narragansett (Count 6) - Motion to Dismiss GRANTED.

7. Breach of Contract against NG-LNG (Count 7) - Motion to Dismiss GRANTED.

8. Statutory Violation of minimum operating standards under 49 U.S.C. § 60103 (d) against NG-LNG (Count 8) - Motion to Dismiss GRANTED.

9. Negligence against Algonquin (Count 9) - Motion to Dismiss DENIED.

10. Breach of Contract against Algonquin (Count 10) - Motion to Dismiss

   GRANTED.[3]

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

June 2, 2021

---

[3] The negligence claims -- Counts 2, 3 and 9 -- against Narragansett, NG-LNG, and Algonquin survive.