UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BHK REALTY, LLC, THE PALE, LLC D/B/A BUSKERS PUB and THE BODHI SPA, LLC on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NARRAGANSETT ELECTRIC COMPANY d/b/a NATIONAL GRID, NATIONAL GRID LNG LLC and ALGONQUIN GAS TRANSMISSION, LLC,<br><br>Defendants. | C.A. No. 1:19-cv-00642-JJM-LDA |
| RICHARD HYDE, SEAN McKENNA on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NARRAGANSETT ELECTRIC COMPANY d/b/a NATIONAL GRID, NATIONAL GRID LNG LLC and ALGONQUIN GAS TRANSMISSION, LLC,<br><br>Defendants. | C.A. No. 1:19-cv-00643-JJM-LDA |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR APPOVAL OF AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENT**

## I. **Introduction**

Class Counsel reached agreement to settle this class action for $2 million[1]. Reaching settlement in such a complex matter is the ideal — the norm is protracted litigation with an uncertain outcome.

Here, Class Counsel and Defendants agreed to mediate the case rather than engage in the war of attrition that significant and complex class action matters typically engage. From the parties' agreement to stay litigation to test the waters in mediation, took several months of hard bargaining to sketch the outlines of the Settlement, and an extensive mediation to finalize it. See **Exhibit No. 1**, (Declaration of Brian R. Cunha)

Class Counsel believe the Settlement to be fair, reasonable and adequate. (Declaration of Brian R. Cunha).

Class Counsel worked efficiently to obtain this recovery without the risk, cost and years-long delay that litigation would have brought. Rather than becoming mired in a protracted legal proceeding with no guarantee of success, Class Counsel focused on negotiating a Settlement that will bring compensation to class members, within a reasonable time frame and should be compensated for his efforts, efficiency, and the results received.

To compensate Class Counsel, Class Counsel requests a fee of 25% of the Settlement Fund, in the amount of $500,000.00. This fee request represents approximately 2/3 of the standard contingent fee of one-third of the recovery and is below the normal range of percentage-based class action fees approved in First Circuit fee jurisprudence. *See, e.g., In re: Walgreens Item Pricing Coordinated Class Action*, 2004 WL 6036251; *In re Neurontin Mktg, and Sales Practices Litig.*, 58 F. Supp. 3d 167,172 (D. Mass. 2014) (nearly two-thirds of percentage based class action fees were between 25% and 35% of the common fund; First Circuit mean was 27% and median was 25%).

While the First Circuit has not established a benchmark percentage for common fund awards, other courts in the Circuit have approved percentage-based fees to thirty-five percent. *See Mazola v. May Dept. Stores Co.*, No. 97-cv-10872-NG, 1999 WL 1261312, at 4 (D. Mass. Jan. 27, 1999) ("1n this circuit, percentage fee awards range from 20 % to 35 % of the fund. This approach mirrors that taken by the federal courts in other jurisdictions"); *Pavlidis v. New England Patriots Fool-ball Club, 675* F. Supp. 707, 709, 712 (D. Mass. *1987)* (observing that

---

[1] As part of the $2 Million settlement, the Defendants paid $53,289.71 to resolve insurance subrogation claims leaving $1,946,710.39 to be paid to Class Members.

fees in the 20%-50% range in common fund class actions are not uncommon, and approving fees calculated as 33% of the first $2 million recovered, 25% of the next $3 million, and 20% of any amount over $5 million).

Here, the requested fee will compensate Class Counsel for his investment of more than 1800 collective of hours of time and thousands of dollars in expenses needed to bring this case to an expeditious resolution, the substantial risk he accepted, and the excellent results obtained. And it will do so at a percentage that is below the one-third awards common in the jurisprudence. Without Class Counsel's investment of time, work and resources, made on an entirely contingent basis, this Settlement would not have been possible. The fee request is fair and reasonable whether evaluated on a percentage basis or using "lodestar". The requested costs and incentive awards for the named plaintiffs are reasonable as well, as more fully described below.

## II. The Requested Fee is Fair and Reasonable

### A. The Percentage of Fund Method Is "The Prevailing Praxis" Because It Aligns Counsel and Class Members' Interests and Rewards Efficiency and Results

The determination of a reasonable fee "is a question that is committed to the sound discretion of the judge." *Heien v. Archstone*, 837 F.3d 97,100 (1st Cir. 2016) (citing *In Re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig*., 56 F.3d 295, 307 (1st Cir. 1995); *Berman v. Linnane*, 434 Mass. 301, 303 (2001) (citations omitted). In exercising that discretion, a court may award fees "on either a percentage of the fund basis or by fashioning a lodestar."

In cases like this, where a class action settlement results in a common fund, the majority of federal cases approve fees based on a percentage of the recovery. As Judge VanGestel observed in *In re: Walgreens Item Pricing Coordinated Class Action*, 2004 WT., 6036251, "the lodestar method", once the dominant approach, has now lost considerable favor to what is called the percentage of fund ("PO") or recovery method." In fact, the percentage of fund method in common fund cases "is *the prevailing praxis"* because of its distinct advantages over the lodestar. *In re Thirteen Appeals, 56* F.3d at 305 (emphasis added); *McLaughlin on Class Actions, § 6:24* at 165 (collecting cases), See *In re: Walgreens Item Pricing Coordinated Class Action,* 2004 WL 6036251 (citing First Circuit case law in awarding percentage-based

fee). Courts in the First Circuit have identified multiple reasons to prefer the percentage of fund method in cases like this.

*First,* it "more appropriately aligns the interests of the class with the interests of class counsel—the larger the value of the settlement, the larger the value of the fee award." Bussie *v. Allamerica Financial Corp*., 1999 WL 342042, *2 (D. Mass. May 19, 1999); *In re Relafen Antitrust Litigation,* 231 F.R.D. 52, 79 (D. Mass. 2005) (accord); *Duhaime v. John Hancock Mu t. Life Ins.* Co., 989 F. Supp. 375,377 (D. Mass. 1997) (one of the "distinct advantages" of the POF method is its focus "on result, rather than process"). As Judge VanGestel emphasizes in *Walgreens Item Pricing,* the percentage of fund method is focused on results. 2004 WL 6036251, at 2. Ultimately, from the perspective of the class, results are what matter most. This reality has been accepted class action doctrine for at least two decades. *See* Third Circuit Task Force Report, *Selection of Class Counsel, 208* F.R.D. 340, 355 (Jan. 15, 2002) (percentage method "better aligns the interests of class counsel and class members because it ties the attorneys" award to the overall result achieved rather than the hours expended.").

*Second,* the percentage of fund method rewards efficiency and "avoids the disincentive to settle cases early created by the lodestar method." *In re Relafen, 2331* F.R.D. at 79; *In re Thirteen Appeals, 56* F.3d at 307 (percentage method enhances efficiency while lodestar encourages inefficiency by creating monetary incentive to spend as many hours as possible, and to delay settlement); *Duhaime,* 989 F. Supp. at 377 (same).

*Finally,* the percentage method "is less burdensome to administer," and is therefore less taxing on judicial resources than the lodestar. *In re Thirteen Appeals, 56* F.3d at 307; *In re Lupron Mktg. & Sales Practices Litig., No.* 01-CV-10861-RGS, *2005 WL* 2006833, at *3 (D. Mass. Aug. 17, 2005) *(citing In Re Thirteen Appeals).* Unlike the lodestar analysis, which here would force the court to analyze the time records of thousands of hours, the percentage of fund method allows the court to focus on what is more meaningful to the class, a "showing that the fund conferring a benefit on *the class resulted from the lawyers' efforts."' In re Thirteen Appeals, at 307, citing Camden I Condominium Assn, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir.1991),

All of these benefits — tying the fee closely to the results, rewarding efficiency, and alleviating the burden on the court — make the percentage method appropriate here.

### B. All Operative Factors Support the Fee Request

When determining the reasonableness of a fee award Federal Courts general cite a number of factors, including "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the results obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases. See *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167,170 (D. Mass. 2014), In *re Lupron, 2005 WL* 2006833, at *3; *In re Tyco Intern., Ltd. Multidistrict Litig.,* 535 F. Supp, 2d 249, 266 (D.N.H. 2007).

#### 1. The $2 Million Settlement Fund is Fair and Reasonable

Here, the percentage fee requested is lower than those awarded in similar complex class actions. It is especially beneficial to injured class members because the allocation Plan designed by Class Counsel and their experts directs the vast bulk of Settlement funds to those who suffered "loss of use" of their properties "When comparing "the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation," there are clearly strong arguments for approving a settlement. *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass 2000).

And the Settlement's value is enhanced by benefits being provided to the Class now, without the delay, risks and burdens of further litigation.[4] In cases involving similarly catastrophic events it is common to measure the time to resolve class action in *years*, not months. *See, e.g., In Re: FEA4.A Trailer Formaldehyde Product Liability Litigation*, MDL 1873, Case No. 2:07-md-01873-KDE-ALC, ECF nos. 25887 and 25888 (E.D. La. Sept. 27, 2012) (approving class settlements in September 2012, *seven years* after Hurricanes Katrina and Rita occurred in 2005).

#### 2. Class Counsel Assumed A Significant Risk of Non-Recovery — The Complexity And Novelty Of The Issues Heightened That Risk

Plaintiffs believe that their claims have merit and that they could ultimately make a compelling case at trial. Nevertheless, they faced critical legal and factual issues which created the very real prospect of total loss. Because Class Counsel's work on this case was entirely

contingent, they bore the entire risk of loss. Judge Posner explains the significance of this risk factor:

> A contingent fee must be higher than the fee for the same legal services as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but also for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan.

Two legal issues in particular had the potential to derail this litigation: (a) Narragansett Electric and other Defendants' Tariffs and (b) the Economic Loss Doctrine.

**a. The Tariff's Express Language Insulates Narragansett Electric Co.("Narragansett") and the other Defendants From Incidental and Consequential Damages**

As discussed in the final approval brief, the Tariff language expressly precludes incidental and consequential damage claims. It contains explicit disclaimers of liability for "loss of use" claims for which the Settlement provides compensation. In short, Narragansett and the other Defendants' Tariffs state that they "shall not be liable to any party for any consequential, direct or special damages...whether arising in tort or otherwise." Tariff, § 11.0. *(*See generally, Narragansett Tariffs, Rate Schedules, and Agreements §11.0 ("Tariffs"). **Ex. 2** [2]) All Defendants asserted from the beginning that these provisions drastically limited its potential liability.

**b. The Economic Loss Doctrine Could Have Barred Recovery For The Vast Majority Of Class Members**

In addition, Plaintiffs faced the possibility of a ruling that the economic loss doctrine in negligence cases completely bars recovery for purely economic losses in the absence of personal injury or property damage. See *Franklin Grove Corp. v. Drexel, 936 A.2d, 1272 (R.I. 2007); Hexagon Holdings, Inc. v. Carlisle Syntec, Inc., 179, A.3d, 146 (2019)*, ("The traditional economic loss rule provides that, when a defendant interferes with a contract or economic

[2] Tariff Agreements Narragansett has with the RIDPU (Section 11.0) provide: National Grid "shall not be liable to Customer for any loss or damage incurred by Customer resulting from any curtailment or interruption…." of service.

opportunity due to negligence and causes no harm to either the person or property of the plaintiff, the plaintiff may not recover for purely economic losses."). The cautionary tale of the *Hexagon Holdings* litigation synopsized in the Plaintiffs' final approval brief illustrates how the doctrine can eviscerate or significantly reduce recovery.

### c. Risk vs. Reward Calculus — The Settlement Entitles Class Members To Benefits That May Well Have Been Denied Them In Contested Litigation

Were the court to rule in the Defendants' favor on the economic loss doctrine, as in *Hexagon Holdings, or* under the Tariffs, Class Members would likely have recovered nothing At the same time, Class Counsel faced the always present risks that although they obtained and maintained class certification many class members who suffered "loss of use" have previously been reimbursed by Narragansett for that harm through payment for temporary lodging, food and substitute heating.

Here, the considerable risk of losing critical legal issues outright, coupled with the substantial investment of time and thousands of dollars in expenses advanced, weighs strongly in favor of the requested fee. See (Declaration of Brian R. Cunha). *See, e.g., Jenson v. First Tr. Corp.*, No. CV 05-3124 ABC, 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008) ("Uncertainty that *any* recovery ultimately would be obtained is a highly relevant consideration. Indeed, the risks assumed by Counsel, particularly the *risk of* non-payment or reimbursement of expenses, is important to determining a proper fee award." (internal citation omitted)); In *re Omnivision Techs., Inc., 559 F.* Supp. 2d 1036,1046-47 (N.D. Cal. 2008) ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."

### d. Class Counsel Brought A Complement of Skills and Experience to this Case

Class Counsel is highly experienced in litigating class actions in general, and the specialized legal and factual issues presented by mass disaster and gas explosion cases like this one. See (Declaration of Brian R. Cunha).

**3. <u>The 25% Percentage Requested Is Two-Thirds of the One-Third Contingency Fee Norm, And Substantially Less Than Fees Awarded In Similar Cases</u>**

As federal courts routinely award percentage based fees ranging from 25% to 35% of the recovery, with one-third being common, Class Counsel's fee request is on the low norm for comparable class action settlements. *See In re Neurontin., 58* F. Supp. 3d at 172 (noting most fees in the 25% to 35%) range; awarding fee of 25%); *In re: Walgreens Item Pricing Coordinated Class Action,* 2004WL 6036251 (Mass. Super.) (VanGestel, J.) (approving fees of one-third of settlement fund). *See, e.g., <u>Cullinane v. Uber Technologies, Inc.,</u>* Case No. 1:14-cv-14750-DPW (D. Mass.) (ECF # 239, January 29, 2020 order awarding 30% of $3 million settlement fund obtained for class of Uber riders charged "'Massport fees" which Uber did not pay to Massport); *Henderson v. BNY Mellon,* Case No. 1:15-cv-10599-PBS (D. Mass.) (ECF # 606, September 30, 2019 order awarding one third fee of $10 million nationwide class settlement).

The 25% fee award requested here is similar to what courts in similar cases across the country have awarded. *See, e.g., <u>Halley v. Honeyziell, Int'l</u>,* 861 F.3d 481, 487 (3d Cir. 2017) (awarding 25% attorneys' fees); *In re: Oil Spill by the Oil Rig "Deep Water Horizon" in the Gulf of Mexico, On April 20, 2010,* 2012 U.S. Dist. LEXIS 83214 at *4 (E.D. La. June 15, 2012) (limiting all attorney's fees to no more than 25%). And empirical studies substantiate the reasonableness of Class Counsel's request. Id.

**4. <u>Public Policy Considerations Support The Fee Request</u>**

'When a class action settlement produces a common fund, courts generally favor an award of has from the fund, as called for by the proposed settlement in this case. As the Supreme Court explained:

"[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole.... Jurisdiction over the fund involved in the litigation allows a Court to prevent ... inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit."

*<u>Boeing Co. v. Van Gemert</u>, 444* U.S. 472,478 (1.980) (citations omitted).

There is an overriding public interest in favor of settling class actions. *See Lazar v. Pierce*, 757 F.2d 435, 439 (1st Cir.1985); *In re: Lupron Mktg, & Sates Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005); *Durrett v. Housing Auth. of City of Providence*, *896* F.2d 600, 604 (1st Cir.1990) (citing "long-recognized policy of encouraging settlements"). Having the fee amount settled, subject to review by the Court, supports that public interest.

**5. Lodestar Method Similarly Supports the Requested Fee. Class Counsel's Firm Spent in excess of 1,875 Hours and $76,248.67 in expenses to Bring The Settlement to Fruition**

Class Counsel has submitted his declaration with summary entries documenting the hours worked and the categories of tasks completed which were necessary to achieve this Settlement.

In applying the percentage of the fund method, Courts may consider the "lodestar method" to gauge the reasonableness of any percentage of fund award. *Bacchi v. Mass. Mut.* Life Ins. Co., 2017 WL 5777610 at *4 (D. Mass. Nov. 8, 2017). When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re: Tyco,* 535 F. Supp. 2d 249,270 (D.N.H. 2007) (citing *Thirteen Appeals*, 56 F.3d at 307).

Class Counsel has contemporaneously tracked the time and money spent prosecuting this case. For ease of reference, Counsel has consolidated this information for the Court's review in the Declaration of Plaintiffs' Class Counsel, Brian R. Cunha. The summaries of hours contained in the declaration show that to date, Class Counsel has spent approximately 1875 hours to bring about the Settlement. In addition to the time in the case, to date Class Counsel has advanced $76,248.67 for experts, mediation, travel, and other expenses. See (Declaration of Brian R. Cunha)

Importantly, the time and money Class Counsel spent, though significant, was far less time consuming and costly than litigating this actions to its conclusion. Class Counsel avoided many of the costs and expenses associated with complex and drawn-out litigation, e.g., spending time and money on liability experts, obtaining extensive discovery, depositions and maintaining an e-discovery platform, and instead focused their resources intensively on resolving the case for the class.

Class Counsel's investment of thousands of hours of time and advancement of all expenses was all done contingently, with no assurance of recovery.

**6. The $450.00/hr. loadstar fee rate is reasonable**

Based on other attorneys with similar experience and doing similar work, the fee lodestar rate is well below the rate similarly charged and approved in other cases in this and other Districts and is fair and reasonable, and in line with the rates charged by other attorneys that do such work. See:

(1) *In Re: Google Buzz User Privacy Litigation*, United States District Court for the Northern District of California, San Jose Division, Case No. 10-00672-JW, attorney fee declaration filed December 20, 2010, hourly billing rate of $625.00;

(2) *Trombley v. Bank of America Corporation*, United States District Court for the District of Rhode Island, Case No. 08-00456-JD-LM, attorney fee declaration filed October 7, 2011, hourly billing rate of $625.00;

(3) *Nash v. CVS Caremark Corporation*, United States District Court for the District of Rhode Island, Case No. 09-00079-M, attorney fee declaration filed March 7, 2012, hourly billing rate of $625.00;

(4) *Vought v. Bank of America*, United States District Court for the Central District of Illinois, Urbana Division, Case No. 10-02052- MPM-DGB, attorney fee declaration filed May 23, 2012, hourly billing rate of $625.00;

(5) *Cappalli v. BJ's Wholesale Club*, United States District Court for the District of Rhode Island, Case No. 10-00407-S-PAS, attorney fee declaration filed December 5, 2013, hourly billing rate of $625.00; and,

(6) *Lopez v. American Express Bank*, United States District Court for the Case 1:18-cv-00171-JJM-PAS Document 15-1 Filed 09/07/18 Page 4 of 5 Page ID #: 447 Central District of California, Case No. 09-07335-SJO-MAN, attorney fee declaration July 15, 2016, hourly billing rate of $650.00.

Accordingly, under lodestar fees if charged hourly, 1,875.5 x $450 = $843,975.00 (Attorney billed hours) and 122.45 x $250.00 = $30,612.50 (Paralegal billed hours) would exceed $874,587.00, was reasonably and necessarily incurred in connection with this litigation

### 7. **Expenses in the amount of $76,248.67 were Necessary and Reasonable and Should Be Reimbursed**

Additionally, Plaintiffs' counsel paid $76,248.67 for costs and expenses. Class Counsel requests that the Court approve the payment of litigation expenses, and the costs of notice and administration costs paid by Plaintiffs' counsel from the Settlement Fund. (See categorized summary of expenses.) **Ex. 3**.

### 8. **The Requested Incentive Awards Are Reasonable.**

Class Counsel seek approval of incentive awards of $15,000 each to Named Plaintiffs. These proposed awards are fair and reasonable, as these Plaintiffs agreed to be the face of the litigation, and through that initiative played a significant part in obtaining this recovery. The Plaintiffs participated in interviews with Class Counsel, proposed discovery, depositions and production of documents and answers to interrogatories and mediation, participated in settlement discussions, and provided valuable assistance to Class Counsel, including providing key documents and facts regarding the case.

It is not uncommon for courts to approve incentive payments in amounts much higher than that requested here. *See, e.g., Godt et al. v. Anthony's Pier Four, Inc.,* Suffolk Civ. A. No. 07-3919 (Mass. Super. 2009) ($25,000 incentive payment for lead plaintiff); *Henderson v. BNY Mellon, Case* No. *1:15-cv-10599*-PBS (D. Mass.) (awarding named plaintiffs $30,000 each).

Courts have widely recognized that incentive awards serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. *See In re Relafen*, 231 F.R.D. at 82 ("incentive awards are recognized as serving an. important function in promoting class action settlements"); *In re Compact Disc Min. Adver. Price Antitrust Litig*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to

encourage or induce an individual to participate in the suit").

## III. <u>Conclusion</u>

Class Counsel respectfully requests that the Court approve the fees, costs, and incentive payments requested.

Plaintiffs,
By their attorneys,
BRIAN CUNHA & ASSOCIATES, P.C.

*/s/ Brian R. Cunha*
______________________________________
Brian R. Cunha, Esq.
311 Pine Street
Fall River, MA 02720
Tel: (508) 675-9500
Fax: (508) 679-6360
R.I.#4074
Brian@briancunha.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of June 2024, I served this document to all counsel of record through electronic mail:

Adam M. Ramos, Esq.
Hinckley Allen & Snyder, LLP
100 Westminster Street, Suite 1500
Providence, RI 02903-2319
aramos@hinckleyallen.com

Robert M. Duffy, Esq.
Duffy & Sweeney, Ltd.
321 South Main Street, 4th Floor
Providence, RI 02903
rduffy@duffysweeney.com

*/s/ Brian R. Cunha*